**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WALLACE BROWN,**

                 **Plaintiff,**          **1:04-CV-649**
                                                                   **(GLS/RFT)**

       **v.**

**CAPITAL DISTRICT PSYCHIATRIC**
**CENTER,**

                 **Defendant.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Wallace A. Brown, Jr.
Plaintiff, *Pro Se*
137 Clinton Street
Albany, New York 12202

**FOR THE DEFENDANT:**

HON. ANDREW CUOMO           BRUCE J. BOIVIN
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, New York 12224

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se*, Wallace Brown, alleges, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* (Title VII), that his former employer, Capital District Psychiatric Center (CDPC), discriminated against him on the basis of his race.  Pending under Federal Rule of Civil Procedure 56 is CDPC's motion for summary judgment.  *See Dkt. No. 29*. For the reasons that follow, CDPC's motion is granted.

## II.  Facts

Viewing the facts in the light most favorable to Brown, the material undisputed facts are as follows.  Brown, an African-American, was formerly employed by CDPC as a Mental Health Therapy Aide (MHTA).  *See Def. SMF ¶ 1, Dkt. No. 29.*  On August 25, 2002, Brown was on duty at the Jansen House, a residential half-way house where CDPC patients live in a community setting as they transition from in-patient care to independent living.  *See id. ¶ 2.*  An incident occurred that night involving Brown, and CDPC began an investigation into the incident.[1]  *See id. ¶ 3.*

Meanwhile, on September 2, Brown was reassigned to MHTA duties

---

[1] In its memorandum of law, CDPC explains that on August 25, 2002, a patient at Jansen House complained of shortness of breath and chest pain.  *See Dkt. No. 29.*  Instead of calling 911 pursuant to CDPC's standing operating procedure, Brown, who was on duty at the Jansen House that evening, filled out a consultation sheet and allowed the patient to drive himself to the hospital.  *See id.*  Brown was aware that the patient had a history of heart problems.  *See id.*

2

at CDPC in patient services as part of a "float pool."[2]  *See Def. SMF ¶ 3, Dkt. No. 29.*  The reassignment was a regular MHTA position in which Brown would be under close supervision.  *See id. ¶ 9.*  This position also allowed Brown to continue his employment in patient care while receiving the same pay and working the same shift.  *See id.*  It is CDPC's standard operating procedure to reassign an employee whose job performance is being investigated until the situation is resolved.  *See id. ¶ 4.*

On October 2, Brown received a Notice of Discipline with a proposed penalty of termination on the charges of insubordination and misconduct resulting from the Jansen House incident.  *See Def. SMF ¶ 5, Dkt. No. 29.*  Brown had previously been counseled on two occasions in 2002 for failing to follow established procedures.  *See id. ¶ 6.*  He also received a performance evaluation for the period of December 2001 to December 2002 reflecting unsatisfactory performance for his Jansen House duties.  *See id. ¶ 7.*

At about the same time the Notice of Discipline was served, CDPC reorganized its patient services, changing from a unit-based system to a

---

[2] In his "float pool" duties, Brown was assigned as needed to a particular charge nurse for the day.  *See Def. SMF ¶ 3, Dkt. No. 29.*

facility-wide "treatment mall."  *See id. ¶ 12.*  The treatment mall was a central location to which patients came from 10:00 a.m. to 3:00 p.m. each day for treatment.  *See Def. SMF ¶ 13, Dkt. No. 29.*  Among the patients who traveled to the treatment mall was Loren L., a forensic patient who had suffered a brain injury and had a history of behavioral problems.  *See id. ¶ 16.*  Loren L. required constant supervision, and Brown was assigned to be his escort.  *See id. ¶ 17.*  Brown's duties included escorting Loren L. to and from the treatment mall, sitting with him at his group sessions, and intervening when Loren L. misbehaved.  *See id. ¶ 18.*  Brown performed his duties as Loren L.'s escort well.  *See id. ¶ 19.*

At one point during this assignment, Brown complained to the director of nursing at CDPC that he was not receiving regular breaks.  *See Def. SMF ¶ 21, Dkt. No. 29.*  She instructed Brown's direct supervisors to ensure that he received regular breaks.  *See id. ¶ 22.*  At no time did Brown express concerns to CDPC supervisors that he was the victim of racial discrimination.  *See id. ¶ 23.*

On June 17, 2003, Brown received a second Notice of Discipline with a proposed penalty of a $200.00 fine on the charges of insubordination and misconduct.  *See id. ¶ 8.*  These charges resulted from Brown's failure to

4

follow the "Special Observation Policy" while performing a one-on-one watch of a patient.  *See Def. SMF ¶ 8, Dkt. No. 29.*

On August 6, 2003, Brown called the U.S. Attorney's office in Albany and made what were interpreted as threats directed at CDPC.  *See id. ¶ 23.*  As a result of the call, Brown was placed on administrative leave with pay.  *See id. ¶ 22.*  He was not permitted to enter the grounds of CDPC without facility administration authorization.  *See id.*

On May 14, 2004, Brown received a suspension Notice of Discipline with a proposed penalty of termination on the charges of misconduct resulting from the August 6, 2003 telephone call.  *See id. ¶ 25.*  Pending the resolution of the Notice of Discipline, Brown was suspended without pay.  *See Def. SMF ¶ 25, Dkt. No. 29.*  The Notice of Discipline was heard by an arbitrator who ultimately found Brown guilty of the charge.  *See id. ¶ 26.*

On August 19, 2003, Brown filed a complaint with the New York State Division of Human Rights.  After a hearing, a determination and order was issued on February 6, 2006, finding no probable cause to believe that CDPC "has engaged in or is engaging in the unlawful discriminatory practice complained of."  *See id. ¶ 28.*

5

### III. Procedural History

On June 7, 2004, Brown filed a complaint in this court naming CDPC and other individually named defendants. *See Dkt. No. 1*. Following a lengthy motion practice, the court dismissed the individual defendants from the complaint and extended Brown's time to properly serve CDPC. *See Dkt. No. 11*. CDPC was ultimately served, and on February 3, 2005, CDPC filed an answer. *See Dkt. No. 18.* On July 14, 2006, CDPC filed its motion for summary judgment. *See Dkt. No. 29.* The motion is now fully briefed. *See Dkt. Nos. 31, 32.*

### IV. Discussion

### A. Motion for Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing FED. R. CIV. P. 56(c)); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165,170 (2d Cir. 2006) (citation omitted). All reasonable inferences must be drawn in favor of the nonmoving party. *See Allen v. Coughlin,* 64 F.3d

77, 79 (2d Cir.1995). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted); *see also SEC. v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). However, "[c]onclusory allegations, conjecture and speculation...are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

### B.  Title VII Burden-Shifting Framework

CDPC argues that Brown's complaint fails to establish a *prima facie* case of employment discrimination under Title VII. In the employment discrimination context, the plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-510 (1993). The initial burden is "minimal." *Id.* at 506. In this case, the plaintiff must prove: (1)

7

that he was a member of a protected class, (2) that his job performance was satisfactory, (3) that, despite his qualifications, he suffered an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Once the plaintiff satisfies his initial burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *See McDonnell Douglas*, 411 U.S. at 802. "Although the burden of production shifts to the defendant, the ultimate burden of persuasion remains always with the plaintiff." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999). If the defendant proffers a legitimate, nondiscriminatory reason, "the presumption raised by the *prima facie* case is rebutted...and drops from the case." *St. Mary's Honor Ctr.*, 509 U.S. at 507 (internal quotation marks and citation omitted).

As mentioned, Brown bears the initial burden of establishing: (1) that he was a member of a protected class; (2) that his job performance was

8

satisfactory; (3) that, despite his qualifications, he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See McDonnell Douglas Corp.*, 411 U.S. 792 at 802.  CDPC concedes that, as an African-American, Brown is in a protected class and has therefore satisfied the first element of his Title VII discrimination claim.  However, CDPC argues that Brown cannot satisfy the other elements of his claim because he was not satisfactorily performing his job and suffered no adverse employment decision.  Finally, CDPC argues that Brown has offered no evidence of discrimination.

     Based on the undisputed facts, the court agrees with CDPC that Brown is unable to prove that he was performing his job satisfactorily. During the tenure of his employment at CDPC, Brown received two Notices of Discipline and two counseling statements for failing to follow established procedures.  In December 2002, Brown received a year-long evaluation reflecting an unsatisfactory performance for his duties at Jansen House. Brown does not contest these facts or proffer a contrary argument.  *See Brown SMF, Dkt. No. 31*.

     Moreover, Brown's reassignment does not rise to the level of an

adverse employment action.  "Employment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices...unique to a particular situation."  *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks and citation omitted).  "[T]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* (internal quotation marks and citation omitted).  Although Brown was transferred from the Jansen House to CDPC, his work shift and pay remained the same.  The transfer also allowed Brown to continue working with patients in a capacity providing Brown with significant responsibilities.  Brown has offered no facts suggesting that his reassignment constituted an adverse employment action.

  Finally, although Brown alleges in conclusory fashion that CDPC discriminated against him on the basis of his race, he offers no factual support for these conclusions.  "Purely conclusory allegations of discrimination, absent any concrete particulars, are insufficient."  *Cameron*

10

*v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) (internal quotation marks and citation omitted).

Brown has not established that his job performance was satisfactory or that he suffered an adverse employment action. Moreover, he has not offered any factual support for his conclusory allegations of discrimination. Due to these failures, Brown cannot satisfy his burden of establishing a *prima facie* case of discrimination. Accordingly, CDPC's motion is granted, and Brown's complaint is dismissed in its entirety.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that CDPC's motion for summary judgment is **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

January 12, 2007
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge

12